```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GARDEN CITY BOXING CLUB, INC.,

                          Plaintiff,                    REPORT AND
                                                        RECOMMENDATION
          -against-                                     CV-05-3709 (JG)

EMALINDA ROSARIO, Individually, and as officer,
director, shareholder and/or principal of DELICIAS
DE ACAPULCO CORP. d/b/a DELICIAS DE
ACAPULCO REST., and DELICIAS DE
ACAPULCO CORP. d/b/a DELICAS DE
ACAPULCO REST.,

                          Defendants.
------------------------------------------------------------------------X
GOLD, S., U.S.M.J.:
```

## Introduction

Plaintiff, Garden City Boxing Club, Inc., brings this action alleging that defendants, Emalinda Rosario, individually and as officer, director, shareholder and/or principal of Delicias De Acapulco Corp., d/b/a Delicias De Acapulco Restaurant, and Delicias De Acapulco Restaurant, unlawfully and illegally intercepted and misappropriated an exhibition of a boxing match held on November 27, 2004 between Barrera and Morales (the "event") in violation of the Federal Communications Act of 1934, codified as amended, 47 U.S.C. §§ 553 and 605. See Compl. ¶¶ 1, 12, 31. More specifically, plaintiff alleges that defendants intercepted and received the event without paying the required fees, and displayed it to the patrons of Delicias De Acapulco Restaurant. Compl. ¶ 15.

Upon plaintiff's application and in light of defendants' failure to appear or otherwise defend in this action, the Clerk of the Court entered the default of defendants on January 18,

2006, and the Honorable John Gleeson referred this case to me for report and recommendation on the issue of damages as to the defaulting defendants. See Docket Entries 6, 8. Plaintiff has submitted a memorandum of law, dated January 5, 2006, ("Pl.'s Mem."), the affidavit of Joseph Gagliardi, president of Garden City Boxing Club, Inc., dated November 22, 2005 ("Gagliardi Aff."), and the affidavit of Julie Cohen Lonstein, plaintiff's counsel, dated January 5, 2006 ("Lonstein Aff."), in support of its application for statutory damages and attorneys' fees and costs. Defendants have not submitted any opposition to the relief sought by plaintiff.

### Facts

Plaintiff, Garden City Boxing Club, Inc., owns the distribution rights to the event, which was broadcast via closed circuit television and by encrypted satellite signal on November 27, 2004. Compl. ¶ 12. Plaintiff entered into agreements with various commercial establishments in New York, allowing them to exhibit the event to their patrons in exchange for a fee. Compl. ¶ 13. Defendants did not contract with plaintiff to broadcast the event legally. Compl. ¶ 15; Gagliardi Aff. ¶¶ 6, 8.

Plaintiff hired an investigative agency, Signal Auditing, Inc., to visit various commercial establishments in the New York City area on the night of November 27, 2004 and identify any establishments unlawfully exhibiting the event. Compl. ¶ 15; Pl. Mem. p. 2; Gagliardi Aff. ¶ 5. An investigator witnessed the event being displayed on a television set at Delicias De Acapulco Restaurant. Pl. Mem. pp. 2-3; Gagliardi Aff. ¶ 7. Plaintiff asserts that defendants used unauthorized decoding equipment to intercept the event without paying a fee to plaintiff. Compl. ¶ 16.

**Discussion**

A.    Liability

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Montcalm Pub. Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992).

The allegations of plaintiff's complaint clearly establish the elements of liability required to state a claim under 47 U.S.C. § 605(a).  Section 605(a) provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a).  This section, which by its express terms prohibits unauthorized interception of interstate wire communications, has been held applicable to thefts of cable communications, provided that the cable programming originated as a radio communication.  See Int'l Cablevision v. Sykes, 75 F.3d 123, 131 & n.5 (2d Cir. 1993).  Plaintiff alleges that its cable transmissions are in fact derived from satellite communications.  See Compl. ¶ 12; Pl. Mem. p. 4; see also Kingvision Pay Per View, Ltd. v. Williams, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998) (noting that, under Section 605(a), "[t]he term 'radio' includes satellite transmissions") (citing Nat'l Football League v. Alley, Inc., 624 F. Supp. 6, 9 (S.D. Fla. 1983)).  As the cable transmissions here did originate as satellite communications, Section 605(a) applies to defendants' interception of plaintiff's signal.  Plaintiff alleges that defendants may have used one of the following methods to intercept the satellite broadcast: use of an illegal satellite receiver, misrepresentation of a commercial establishment as a residence, use of an

3

illegal decryption device, or an illegal purchase of satellite authorization codes. Compl. ¶¶ 15, 16; Gagliardi Aff. ¶ 10. Therefore, plaintiff has properly pleaded a claim under Section 605(a) and defendants are thus deemed liable to plaintiff for violating this provision.[1]

B.  Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. Greyhound Exhibitgroup, 973 F.2d at 158. Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. Id. Thus, a court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. See FED. R. CIV. P. 55(b)(2); Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991); Fustok, 873 F.2d at 40. Plaintiff in this case seeks an award of statutory damages and attorneys' fees and costs. Pl. Mem. pp. 5-9. Moreover, defendants have not submitted any opposition. Accordingly, a hearing is not warranted.

---

[1] Plaintiff also pleads violations of 47 U.S.C. § 605(e)(4) and 47 U.S.C. § 553. Comp. ¶¶ 26, 32. In its memorandum of law in support of damages, however, plaintiff argues for an award only pursuant to § 605(a). Pl. Mem. pp. 4-5. In any event, where liability has been established under §§ 553 and 605 of the Communications Act, recovery under both sections is impermissible. See New Contenders, Inc. v. Diaz Seafood Corp., 96 Civ. 4701, 1997 WL 538827, at *1 (S.D.N.Y. Sept 2, 1997). Rather, a court should award damages pursuant to § 605 because it provides for greater recovery than § 553. Time Warner Cable v. Taco Rapido Rest., 998 F. Supp. 107, 110 (E.D.N.Y. 1997); see also Sykes, 75 F.3d at 127.

A claimant who has established liability under § 605(a) may elect between actual damages plus defendant's profits, if any, or statutory damages. See 47 U.S.C. § 605(e)(3)(C)(i)(II). Where a party elects to recover statutory damages, it may recover an award from $1,000 to $10,000 for each violation of § 605(a). See 47 U.S.C. § 605(e)(3)(C)(i). An additional $100,000 in enhanced damages is available where the violation was willful and was committed for commercial advantage or financial gain. See 47 U.S.C. § 605(e)(3)(C)(ii); see also Am. Cablevision v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 Civ. 2834, 1991 WL 58350 (E.D.N.Y. Mar. 20, 1991)).

The amount of damages to be awarded pursuant to § 605 rests in the sound discretion of the court. See 47 U.S.C. § 605(e)(3)(C)(i)(II) (providing for an award "as the court considers just"); see also Taco Rapido Rest., 988 F. Supp. at 111. An award of damages pursuant to § 605 should be based in part on the commercial gain derived from illegal cable broadcasts. One method courts use to determine commercial gain is to assess a per customer charge based upon the number of patrons in the establishment at the time of the broadcast. See, e.g., id. (awarding damages on a per patron basis); Cablevision Sys. Corp. v. 45 Midland Enters., Inc., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same)). Plaintiff has submitted evidence that approximately 38 patrons were present during the illegal broadcast. Gagliardi Aff. Ex. C. I recommend that plaintiff be awarded $50 per patron. See, e.g., Taco Rapido Rest., 988 F. Supp. at 111 (awarding $50 per patron); 45 Midland Enters., 858 F. Supp. at 45 (same). Accordingly, damages should be awarded in the amount of $1,900.

Plaintiff also seeks an enhanced damages award pursuant to § 605(e)(3)(C)(ii), asserting

5

that defendants' acts were willful and committed for financial gain. The Supreme Court has defined willfulness as "disregard for the governing statute and an indifference for its requirements." Transworld Airlines, Inc. v. Thurston, 469 U.S. 111, 126-27, 105 S.Ct. 613, 624 (1985) (quoted in Cablevision v. Lokshin, 980 F. Supp. 107, 114 (E.D.N.Y. 1997)). The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness. See Taco Rapido Rest., 988 F. Supp. at 111 ("In order for [defendant] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act, such as using an unauthorized decoder or altering the cable service in some way so as to receive and view the scrambled transmission."); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). See also Gagliardi Aff. ¶ 10. As plaintiff has pleaded that defendants displayed the event in a commercial establishment, the statutory damage enhancement applicable to willful violations committed for financial gain is available in this case. See 47 U.S.C. § 605(e)(3)(C)(ii).

Courts use a variety of factors in determining whether and to what extent a defendant's willful conduct justifies enhanced damages. These factors include: (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks. Kingvision v. El Rey Del Bistec Y Caridad, Inc., No. 01 Civ. 6562, 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001).

With respect to these factors, plaintiff has not offered evidence justifying a significant enhancement. There is no evidence that defendants engaged in illegal piracy on any another

6

occasion. Plaintiff has not offered any specific evidence concerning actual damages in this case, but alleges that it generally has experienced a "serious erosion of [pay-per-view broadcast] sales to commercial establishments" due to piracy, costing plaintiff "millions of dollars in the last few years." See Gagliardi Aff. ¶¶ 11, 16. Turning to the last three factors, the facts recited in the report of plaintiff's investigator on November 27, 2004 do not support a large statutory damage enhancement. According to the investigator's affidavit, patronage at the restaurant was small, consisting of less than 40 individuals on the night of the fight. See Gagliardi Aff., Ex. C. The establishment had only one television set of average size. Id. Moreover, there is no evidence that defendants advertised or otherwise promoted the fight. Lastly, plaintiff's investigator reported that he did not pay any cover charge to enter Delicias De Acapulco Restaurant. Id. In sum, plaintiff has failed to establish that the defendants profited substantially or derived significant revenue by showing the event.

Nonetheless, the violation was willful. For these reasons, I respectfully recommend an award of $10,000 for willful violation of the statute. This amount, together with the $1,900 in statutory damages, is sufficient to both redress the harm caused by defendants' activities, as well as to deter future violations, particularly where, as here, the defendants' restaurant is small and there is no indication that it is particularly profitable.

C. Attorney's Fees and Costs

Plaintiff also seeks to recover its attorney's fees and costs. An award of fees and costs is mandatory pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). In this Circuit, all claims for attorney's fees must be supported by contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children,

7

Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). Plaintiff seeks to recover $1,175 in attorney's fees for 4.75 hours of attorney work and 3.0 hours of paralegal work, billed at $200 per hour and $75 per hour, respectively. This amount appears to be reasonable and is supported by contemporaneous time records. Lonstein Aff. ¶ 4. Finally, plaintiff seeks to recover costs in the amount of $450, including $250 for filing fees and $200 for the cost of service of process. Lonstein Aff. ¶ 3. This amount is reasonable and is substantiated by documentary evidence. Lonstein Aff. Ex. A. Accordingly, I respectfully recommend that plaintiff be awarded $1,175 in attorney's fees and $450 for costs incurred in connection with this litigation.[2]

## Conclusion

For the foregoing reasons, I respectfully recommend that default judgments be entered against the defendants, jointly and severally, in the total amount of $13,525, consisting of $11,900 in statutory damages and $1,625 in fees and costs.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Chambers of the Honorable John Gleeson within ten days of receiving this Report and Recommendation and, in any event, on or before February 21, 2007. Failure to file timely objections may waive the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Plaintiff is hereby directed to serve copies of this Report and Recommendation upon

---

[2] Plaintiff also refers to an invoice for $350 for investigative work in the supporting affidavit of its president. Gagliardi Aff. ¶ 9. There is no reference to this amount, however, in the Conclusion or "wherefore" clause in plaintiff's Memorandum of Law, or in the text of the Lonstein Affidavit. As a result, defendants did not have proper notice that plaintiff was seeking to recover this amount and I decline to award it.

8

defendants at their last known addresses, and to file proof of service with the Clerk of the Court.

                                                        _____
**Steven M. Gold**
**United States Magistrate Judge**

**Brooklyn, New York**
**February 5, 2007**

*U:\DBH 2006\GCBC v Rosario 020207.wpd*